# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## GRAY V. COMMONWEALTH.

### June 21, 1923.

INTOXICATING LIQUORS—*Possession of Still—Evidence Sufficient to Sustain Conviction—Case at Bar.*—An indictment charged that accused unlawfully had in his possession a copper still, two fermenters, and one still cap.   It appeared from the evidence that a zinc washtub, a twenty-five gallon copper boiler, and two ordinary barrels were found on accused's premises.   Although these utensils could be used in the manufacture of liquor, they are also in general use for household purposes.   The officer testified to finding what he called mash in the barrels, but the charge in the indictment was limited to the unlawful possession of a copper still, etc.   Nothing was said about mash.

   *Held:*   That the evidence was insufficient to support a verdict of conviction.

Error to a judgment of the Circuit Court of Giles county.

*Reversed.*

The opinion states the case.

*W. B. Snidow*, for the plaintiff in error.

*John R. Saunders, Attorney General, J. D. Hank, Jr., Assistant Attorney General*, and *Leon M. Bazile, Second Assistant Attorney General*, for the Commonwealth.

BURKS, J., delivered the opinion of the court.

The accused was found guilty of violating section 21½ of the prohibition law, and sentenced to confinement in jail for ninety days and to pay a fine of $100.

The indictment charged that the accused unlawfully had in his possession a copper still, two fermenters and one still cap for use in the manufacture of ardent spirits; the said still not being registered with the Commissioner of Prohibition, and the accused not being a licensed druggist.

The .evidence shows that a Federal officer, with a search warrant, searched the premises of the accused and found a twenty-five gallon copper boiler setting upstairs near the head of the steps, and two ordinary wooden barrels setting on the outside of the house, and an old piece of a zinc washtub of about twenty-five gallon capacity in the privy. The boiler was an ordinary boiler without top and such as is in general use for household purposes, and the zinc washtub an ordianry tub such as is used for household purposes, and this had a round hole cut in the bottom of it about a foot in diameter, and the top of it around the edge had holes punched or cut in it as if it had been riveted to something in time; that this tub could be inserted in the boiler and when so inserted fitted it. Upon a complete search of all the premises, no whiskey or intoxicating liquors were found, nor any material from which to make any. The officer found no worm nor any other of the necessary paraphernalia of a still, and he testified that it would be impossible to make whiskey or other intoxicating liquors with what he found there. It is also further stated that the larger of the two barrels smelled sour, and the witness reached down in the barrel and picked up a handful of meal, which he called mash, and that the smaller barrel contained traces of mash.

The accused and his wife both testified and denied that he had ever made any whiskey, or had ever sold any, or that the boiler had ever been used for making

whiskey, or for any other purpose than domestic purposes; and that he did not know how to make whiskey and had no idea it could be made with the utensils aforesaid.    They explained that the larger barrel had been used as a kraut barrel, and that they had had kraut in it all winter and had only lately taken the remainder of it from the barrel and canned it.    They also testified that if there was any meal in the vessels, it was placed there without their knowledge or consent.  ˙ The smaller barrel it was said was a fish barrel, and was kept setting under a spout in the yard.    Both barrels were setting out in the yard in plain view from the public highway.

It will be observed that the charge in the indictment is limited to the unlawful possession of a copper still, two fermenters and one still cap.    Nothing is said about mash or other material for making intoxicating liquor. The brief of the Attorney General sets forth the evidence with great fairness, and concludes with this statement: "We think that unless the fact that the testi-˙ mony of the Commonwealth's witnesses, that they found mash in the barrels, was sufficient to sustain the verdict, the assignment (that the verdict is without evidence to support it) is well taken."

We are of opinion that the evidence is not sufficient to support the charge made in the indictment, and that, therefore, the verdict of the jury should be set aside, the judgment of the trial court reversed, and the case remanded to the trial court for further proceedings, if the Commonwealth shall be so advised.

*Reversed.*